Hores Griffin v. Nichols, Shepard & Co.

*Homestead—Abandonment by wife.*

The homestead right of an execution defendant is not forfeited by his omission to select his homestead, if, being within reach, he is not actually notified of the levy or of the proceedings thereunder, and therefore does not know that any occasion has arisen to make a selection.

Estoppel does not generally arise from one's silence or inaction, unless he knows that there is occasion to speak or act.

The opinion of a trial court in chancery upon questions of fact ought not to be hastily rejected on review, if the showing itself rested upon the testimony of only one party and was not very decisive.

A man's homestead exemption is not necessarily destroyed by the act of his wife in abandoning him, or in beginning proceedings against him for a divorce, if he continues to treat the place as his home, working upon it from time to time, and sometimes eating or sleeping there, even though he parts with his furniture, and admits other occupants.

Appeal from Eaton. (Hooker, J.)　Oct. 10–11.—Oct. 24.

BILL to remove cloud from title. Defendant appeals. Affirmed.

*Wood & Maynard* for complainant. The owner of a homestead can dispose of it even as against creditors: *Rhead v. Hounson* 46 Mich. 244; and if, while living with his wife upon a farm which includes it, he sells the whole without the concurrence of his wife, the deed would be void so far as the homestead itself is concerned, and with no more notice to the purchaser than the fact that it was the home and dwelling place of the family: *Dye v. Mann* 10 Mich. 291; *Eldridge v. Pierce* 90 Ill. 474; *Watertown Ins. Co. v. Sewing Machine Co.* 41 Mich. 131; *Shoemaker v. Collins* 49 Mich. 595; and the husband could take advantage of its being void, or his wife, after his death, or his heirs at law; and the fact that his wife had left him and was living apart from him would not give any validity to such conveyance: *Sherrid v. Southwick* 43 Mich. 515; *Barker v. Dayton* 28 Wis. 383; the owner would retain his right to his homestead until he had selected another: *High, appellant,* 2 Doug. (Mich.) 522; and if he left it temporarily with the *intention* of returning to dwell there, he would not thereby lose his acquired homestead: Thompson on Homesteads § 273; *Bunker v. Paquette* 37 Mich. 79; *Pardo v. Bittorf* 48 Mich. 275; *Showers v. Robinson* 43 Mich. 513.

*Corbin & Cobb* for defendant. Removal from premises

appropriated as a homestead is prima facie evidence of its abandonment: *Harper v. Forbes* 15 Cal. 202; *Anderson v. Kent* 14 Kan. 207; *Vasey v. Trustees* 59 Ill. 188; when a homestead right depends on a selection it is waived by failure to make it at the proper time: Thompson on Homesteads § 546; *Frost v. Shaw* 3 Ohio St. 270.

GRAVES, C. J.  July 31st, 1879, the defendants sued the plaintiff by declaration as surety for one Hollister on a promissory note, and judgment was taken by default in the month of January, 1880, for $687.05 damages and costs. February 7, 1881, an execution was taken on the judgment, returnable on the 3d of May, and on the day it issued, the sheriff, by virtue of it, levied on a parcel of forty acres and also on another parcel of about twenty acres adjoining and occupied with it.  June 21st, 1881, the sheriff sold all the premises levied on to the defendants, except a small part of the second parcel, for $775.  This excepted portion was sold afterwards to defendants on a new execution.  November 21st, 1881, the complainant filed this bill to liberate the said forty-acre parcel from the execution proceedings, on the ground that it was his homestead.  The circuit court granted the relief, and the defendants appealed.

As they offered no evidence, the case stands on the showing of complainant.

As we have seen, the territory levied on was larger than the law allows for a homestead, and yet no selection was claimed prior to the sale.  On this ground the defendants' counsel contends that the complainant lost his right under the Constitution.

To this we cannot assent.  He was in the neighborhood and might have been personally notified, but was not.  He had no actual knowledge of the levy, or of the proceedings under it; and being wholly ignorant that there was any occasion for him to intervene, it would be going far to regard his omission as a forfeiture of his right.  If he had been fairly put upon his guard,—if he had been actually notified,

51 MICH.—37

and had then refrained from acting,—there would be room for other considerations.

It may be taken as true in general that unless a person knows there is occasion for him to speak or act, his silence or passivity will not conclude him. No doubt cases may occur of unreasonable delay, or in which circumstances exist which serve to express or imply that the right has been waived or abandoned, and these facts may be contemporary with the sale, or they may be such as occur wholly or in part after it has taken place.

The case before us must rest on its own circumstances, and we are of opinion that they exclude the objection.

That the premises claimed and allowed as a homestead have all the legal requisites is necessarily conceded. The quantity and value are within the limits, and the proper buildings are included. From the fall of 1878 to the fall of 1879 the place was occupied by complainant and his wife. It was their home. That it constituted his homestead during that interval is certain. The argument that it subsequently became lost to him as a homestead virtually admits it. The main contention is that he had abandoned the privilege and wholly given up the right prior to the levy and sale; and in view of this record the question seems to be one of fact, and it must be admitted that the showing is not very decisive. In such a case the opinion of the court of first instance ought not to be hastily rejected.

A rehearsal of all the facts would not be profitable; a brief reference to a few incidents must suffice.

The complainant was married in 1874, and in the fall of 1878 he built the dwelling-house on the property, and they proceeded to occupy it and continued until the fall of 1879 at which time his wife separated from him and left him. They had no children and there was no one to occupy the house with him. His wife subsequently instituted proceedings for a divorce, and the case was still pending when the evidence was taken in this cause. The parties have never lived together since the separation. At the time his wife went away from him he had no other abode, and he has not

owned any other land than this forty acres and the small parcel adjoining. Late in 1879 he admitted a man by the name of Allen, and received board from him. Complainant supplied his own bed, but retained no other of his household goods. After Allen left, which was in the course of a few months, the place was without a family until the fall of 1880, at which time complainant let in a man by the name of Mead. At this time complainant removed his bed. Mead occupied until the spring of 1881, and then went out. During the whole period subsequent to his wife's departure the complainant regarded the place as his home. His stopping elsewhere was transient. He divided his time between laboring for others about the neighborhood and working for himself on this farm, and from time to time he continued to repair to it for work, and sometimes to sleep or rest, and sometimes to eat. As we have seen, the property bore the stamp of a homestead during the wife's continuance with complainant. He had gained the privilege, and the wife's abandonment was not a fact in itself sufficient to destroy it. His right did not lie at her mercy. It did not necessarily depend on her staying or going.

The change would be a circumstance to be considered with others on the question of waiver or abandonment, but it could have no imperative and conclusive effect by itself. That the right did not immediately terminate is certain. It continued longer. *Showers v. Robinson* 43 Mich. 502; *Pardo v. Bittorf* 48 Mich. 275; *Bunker v. Paquette* 37 Mich. 79; *Kenley v. Hudelson* 99 Ill. 493; *Kessler v. Draub* 52 Tex. 575; *Kimbrel v. Willis* 97 Ill. 495; *Silloway v. Brown* 12 Allen 30.

Can any point of time be specified when it did cease? Is it possible to say that the sort of connection with the property which entitled the complainant, after his wife's departure, to still hold it as a homestead has since been severed? The circuit judge maintains the negative. It is his opinion that, taking all the circumstances into account, they fall short of proving that the homestead right which was vested in complainant at the time his wife left him has in any

manner come to an end. And this Court, upon full consideration, is not able to discover any ground in the record which would justify it in overruling that opinion. The case calls for nothing further.

The result is that the decree must be affirmed with costs.

The other Justices concurred.