MANDAN MERCANTILE COMPANY, a Corporation, v. PAT-
RICK SEXTON, Frank Windmueller, and Margaret Sexton,
Intervener.

(151 N. W. 780.)

Defendant and wife purchased a vacant city block, improved the same for
three seasons, finally erecting a dwelling house and other buildings thereon.
Immediately on completion of the house, plaintiff took a mortgage on the tract,
signed only by the husband, who declares in the mortgage that the tract "does
not now and never has constituted any part of his homestead." The wife
refused to sign the mortgage. They owned no other real estate, but had rented
in the same city since long before the purchase of this tract, which they
testified to have bought "to make a home of it." The wife paid part of the
purchase price. To clear the land of a $200 mortgage a lease for a term of one
year was given codefendant W., and immediately on completion of the house
he and family moved in. Four months afterward defendants moved their
furniture into three rooms of the house not rented, intending to reside in it,
but because of inconvenience from the occupancy of the W. family did not
actually take up their residence therein, but attempted to oust W., but did not
succeed. A cow and some chickens were moved on the tract at the same time
the furniture was moved into the house, and remained there several months
until feed on the place gave out. A year and four months after the mortgage
was taken, and about two months after vacation by W., defendants established
actual residence, since maintained continuously in said dwelling. W. had signed
the notes as a joint maker with S. The husband and wife defend, claiming the
mortgage to be void, and that the premises at the time it was taken was their
homestead, which could not be legally encumbered, except the wife join therein.
*Held:*

**Homestead — mortgage on — void when.**
  1. The mortgaged premises was the homestead and the mortgage is void.

**Recitals in mortgage — land not homestead — covenants — mere statements.**
  2. The recitals in the mortgage, that the premises are not a homestead, is
not a covenant. It falls with the mortgage, and amounts to but a statement of
the husband, which cannot of itself operate to validate the mortgage.

**Homestead — property purchased for — family dwelling being built — charac-
teristics of homestead — intent to so occupy — exemptions — in advance
of actual occupancy — residence established in reasonable time.**
  3. Property purchased and improved in pursuance of a good-faith intent to

Note.—The general question of the conveyance or encumbrance of a homestead
by one spouse alone is considered in a note in 95 Am. St. Rep. 909.

build the family dwelling thereon, and to reside therein, is impressed with homestead characteristics entitling the possessors to the homestead exemption in advance of the establishment thereon of actual residence of the claimant and family, where, pursuant to a previous good-faith intent, the actual residence is established within a reasonable time after completion of the dwelling.

**Residence — delay in making — explanation and excuse.**

4. The time so elapsing here before residence began is sufficiently explained and excused.

**Homestead right — constitutional — to family — presumptions in favor will be indulged — good faith.**

5. The homestead right of exemption is a constitutional right guaranteed the family, and all reasonable presumptions in its favor will be indulged where the facts appear consistent with a good-faith claim of homestead right.

Opinion filed February 25, 1915.

From a judgment of foreclosure ordered by the District Court of Stark County, *Leighton,* Special Judge, defendants appeal.

Modified; and judgment, against defendants for recovery of money only, directed; mortgage ordered canceled and foreclosure thereunder set aside and denied; no costs allowed either party on appeal.

*Casey & Burgeson,* for appellant.

Land purchased with a specific intention of making it the homestead, and in pursuance of such intention the purchaser makes improvements thereon and preparation for occupancy, may be claimed as exempt even before actual residence commences. 21 Cyc. 475; Scofield v. Hopkins, 61 Wis. 370, 21 N. W. 259; Davis v. Kelly, 62 Neb. 642, 87 N. W. 347; Woolcut v. Lerdell, 78 Iowa, 668, 43 N. W. 609.

A mortgage of the homestead that is not signed by husband and wife is void. Rev. Codes 1905, § 5082.

The husband cannot, by recitals in the mortgage, waive his wife's homestead interest. Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684.

*W. F. Burnett,* for respondent.

It does not follow that a bare intention to occupy property at some future time will, of itself, suffice to impress the property with the character of a homestead, much less where an unreasonable time intervenes during which tenants are in possession and claimant and his family live upon other land. Davis v. Kelly, 62 Neb. 642, 87 N. W. 347;

Evans v. Calman, 92 Mich. 427, 31 Am. St. Rep. 606, 52 N. W. 787; Ingels v. Ingels, 50 Kan. 755, 32 Pac. 387.

The plaintiff did not move into the property when completed, but rented the premises to a tenant, and resided elsewhere. Woolcut v. Lerdell, 78 Iowa, 668, 43 N. W. 609.

This property was never occupied or claimed as a homestead until after the giving of the mortgage, and not then until same had been defaulted. Brokken v. Baumann, 10 N. D. 453, 88 N. W. 84.

Residence of some kind is a necessary prerequisite to obtain homestead rights in land. Edmonson v. White, 8 N. D. 72, 76 N. W. 986; Blatchley v. Dakota Land & Cattle Co. 26 N. D. 532, 145 N. W. 95.

Goss, J. The question for decision is a mixed one of law and fact. The premises was mortgaged by the husband without the wife joining therein. If the property was the family homestead at the time, the mortgage is concededly void. If not it is valid.

The husband purchased the 2 acre tract in 1909. Plaintiff and wife owned no residence or other real property, though they have lived for many years in Dickinson. Plaintiff cropped the tract to oats and potatoes in 1909, 1910, and 1911. In 1910 they fenced it. Both testify they "bought it to make a home of it." A portion of the purchase price was paid by the wife. Plaintiff works as a stationary fireman for a livelihood. In 1911 Sexton built a six-room house, a stable, and chicken house upon the tract, procuring material of plaintiff. The house was begun the last week in July and completed about August 29th, the date of the mortgage. A small part only of the mortgage debt has been paid. This mortgage was given to secure a portion of the purchase price of building materials used in its erection, and was for the aggregate sum at the time of the rendition of the judgment appealed from, inclusive of interest, $567, remaining unpaid. The husband testifies that at the time of the giving of the mortgage he was having trouble with his wife about where they should live, and that she had refused to go out to this place to live; that he had consulted a number of people as to whether or not he could force his wife to go out there and live; that the husband came to the office of Mr. Burnett, attorney for respondent, some little time before the giving of the mortgage to see him about making a loan on this tract, and told him at that time that his wife

would not go out there, and that they had never lived on these lots at all. The mortgage contained the covenant that the husband, "first party, hereby covenants that the said above-described lot does not now and never has constituted any part of his homestead." The testimony of Crawford, managing agent for plaintiff, is that "Sexton reported to the mercantile company that his wife at this time had refused or would refuse to sign this mortgage, and he and I then went over to Burnett's office to talk it over and see if the papers would be legal, so that we could go ahead with the house to build it and turn it over; and in Burnett's office Sexton asked if the loan could be executed and go through with his signature only, and Burnett asked Sexton if he claimed that as his homestead and if he had never lived there, to which he replied that he had not lived there, as there was no building there he could not claim these premises as his homestead, and that he did not claim it as a homestead, and that he would agree to make that statement in this mortgage 'that it was not, and had not been, his homestead,' which statement was put in the mortgage at Sexton's request." The house was practically completed at the time of the execution and delivery of the mortgage. Within a few days Frank Windmueller moved his furniture and family, his wife and four children, into the house, and continued to reside there from the last of August, 1911, until about the 28th of October, 1912. He had advanced Sexton $200 to take up a mortgage that was on the land before the dwelling house was built and in return for which Sexton gave him a lease of three of the rooms of the house for one year, into which he moved his family immediately on the completion of the building. In October or November, 1911, plaintiff also moved forty or fifty chickens and his cow into buildings on the tract, and also then moved his household furniture, including beds and bedding, stoves, tables, chairs, china closets, and the like into the remaining three rooms not rented to Windmueller, preparatory to and with the intention of residing therein, but that his wife "refused to live in there on the ground that it was too crowded, two families living in there." He left his household furniture there, however, and attempted to get Windmueller to vacate, commencing legal proceedings against him for that purpose, but failed to get him out. The chickens and the cow remained on the place until February or March, when they were removed. After Windmueller vacated, defendants moved in

on December 6, 1912. Sexton defends, claiming the property to have been homestead, and that the mortgage has at all times been void. The wife intervened with the same defense. The trial court held the mortgage was a valid lien and ordered foreclosure, from which they appeal. As Windmueller also signed the notes secured by the mortgage, judgment was ordered against him also. The question is whether, under these facts, these premises constituted the homestead of the defendants.

Residence was not actually established thereon by the defendants until a year and four months after the mortgage was given and that length of time after the dwelling had been completed, although the reason for such delay is clearly apparent, more from inconvenience than from necessity. It was caused by Windmueller's occupancy. He had advanced $200 for a year's rental of the premises, and rightfully refused to vacate until he had received the consideration for money paid. Defendants had procured this advancement of $200 to pay off a mortgage on the premises, evidently preparatory to and to enable them to build the dwelling. As bearing upon whether the land had been impressed with homestead characteristics prior to the time of the execution and delivery of the mortgage in suit the facts determine the issue in favor of the defendants. Both testify they bought the place to make a home of it. While words without acts signifying an intent to make a home amount to nothing in themselves, yet when the succession of acts, coupled with such expression of intent, harmonize therewith and result in the establishment of a home thereon, all will be considered together, and if the home is built and residence therein begun within a reasonable time, under all the circumstances, the means of the parties considered, and all are consistent with a good-faith intention to establish the home as such, instead of to merely defraud creditors or intervening claimants, the homestead exemption should be allowed. The facts disclose a purchase with a reasonable inference of present intent to at some time occupy the premises; their subsequent improvement for two seasons prior to building thereon is entirely consistent with and further indicative of an existing intent to at some time reside there. This is followed by the most eloquent fact of all, to wit, the erection of a substantial dwelling house with other buildings thereon, and this dwelling was just completed ready for occupancy when the mortgage

was given for a part of the cost of the materials used in its construction. At this point plaintiff was confronted with the fact of the refusal of the wife to mortgage these premises having all characteristics of a home. It consulted an attorney to ascertain the legal effect of the wife's refusal to join in the mortgage, and as it was charged with presumed knowledge of the law it must be assumed to have known that the mortgage with but the husband's signature thereon was void, if the land was in law and fact a family homestead. But to strengthen its position it assumed the truth of the husband's statement that the wife would not join in the mortgage and notes. And without inquiry of her as to whether she claimed the premises as a homestead, but with full knowledge that she had the same right of homestead in said premises and to claim the same as had the husband, acting at its peril it accepted as the truth the husband's statement that he had never resided thereon, and did not claim any homestead rights therein. This was a half truth only. He had never actually resided thereon, as plaintiff well knew. He for himself could disavow a homestead right, but without affecting any right of the wife to claim them in and to the same tract, as the right can be exercised by the wife, and cannot be destroyed, if existing, by the husband's declaration alone. His statement in the mortgage was not a covenant, because, if the mortgage be void, it falls with it. It amounts to but a mere declaration by one member of the family, not binding upon the other members thereof. It is entitled to but such weight as would be his oral statements. "It is well settled that a covenant in a mortgage of the homestead executed by the husband alone cannot act as an estoppel against the mortgagor." Note in 95 Am. St. Rep. 922 citing Alt v. Banholzer, 39 Minn. 511, 12 Am. St. Rep. 681, 40 N. W. 830, where it is said: "To work an estoppel the mortgage itself must be a valid instrument. The covenants can have no greater validity than the deed itself. It would nullify the statute to hold that the deed which the law declares void should, by reason of the covenants of the grantor, operate effectually as a conveyance." Bigelow, Estoppel, 338–340; Thompson, Homestead & Exemption, § 474; Connor v. McMurray, 2 Allen, 202; Barton v. Drake, 21 Minn. 299; Conrad v. Lane, 26 Minn. 389, 37 Am. Rep. 412, 4 N. W. 695; Justice v. Souder, 19 N. D. 613 at pages 617 and 618, 125 N. W. 1029; Silander v. Gronna, 15 N. D. 552, 125 Am. St. Rep. 616, 108

N. W. 544; Gaar, S. & Co. v. Collin, 15 N. D. 623–629, 110 N. W. 81. Subsequently, and within two or three months, the chickens and cows are moved upon the place, together with his household furniture, preparatory to and as a step in the establishment of actual residence thereon. Inconvenience and the fact of partial occupancy of the house by Windmueller naturally resulted in delaying establishment of actual residence until that tenant could be removed, whereupon it was followed with reasonable promptness with residence. Deville v. Widoe, 64 Mich. 593, 8 Am. St. Rep. 852–855, 31 N. W. 533, since maintained to the time of suit. Besides Windmueller's reluctance to vacate earlier than the expiration of the term for which he had prepaid his rent, it is also but reasonable to conclude that as he was a joint maker on these notes in suit it was to his interest to hinder and delay the time of commencement of actual residence of the defendants upon said tract as long as possible in order to cause, if he could, an abandonment of any homestead rights of defendants to said tract, or to negative the existence of any; this in order that the mortgage in suit would be held valid, and that the property be made to pay the defendant's debts and relieve him, Windmueller, from his responsibility as a joint maker on the notes. The interests of Windmueller and plaintiff in this suit are identical. This must not be overlooked in considering the refusal of Mrs. Sexton to become a joint occupant with her husband of the premises already in part tenanted by Windmueller.

These conclusions are reached after fairly exhaustive research and a careful consideration of the many authorities. That property such as this may be impressed with homestead characteristics and homestead rights acquired thereby, exempting it as a homestead from sale on execution and that too prior to the actual establishment of residence thereon, has the support of all authority. Reske v. Reske, 51 Mich. 541, 47 Am. Rep. 594, 16 N. W. 895, an opinion by Judge Cooley upon closely analogous facts; Deville v. Widoe, 8 Am. St. Rep. 852, and note (64 Mich. 593, 31 N. W. 533). In this case the facts are also nearly parallel even in length of time elapsing from acquirement of the property to establishment of residence, and citing Barber v. Rorabeck, 36 Mich. 399; Bouchard v. Bourassa, 57 Mich. 8, 23 N. W. 452; Griffin v. Nichols, 51 Mich. 575, 17 N. W. 63; Scofield v. Hopkins, 61 Wis. 370, 21 N. W. 259. The note also cites Hawthorne v.

Smith, 3 Nev. 182, 93 Am. Dec. 397, and note to Arendt v. Mace, 9 Am. St. Rep. 209. See also Gill v. Gill, 69 Ark. 596, 55 L.R.A. 191, 86 Am. St. Rep. 213, 65 S. W. 112. Nor is there anything contrary to this holding in the decisions of this state. All are in harmony with the beneficent spirit and purpose of the constitutional and the statutory provisions exempting the homestead. And knowing the law, plaintiff was warned "that the homestead estate is granted for the benefit of the family, and not for the benefit of the husband and father." Rosholt v. Mehus, 3 N. D. 513, at p. 518, 23 L.R.A. 239, 57 N. W. 783, citing Fore v. Fore, 2 N. D. 260, 50 N. W. 712, and repeated many times to the present. The syllabus in Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684, reannounces the same rule in its declaration that "the homestead exemption is declared in favor of the head of the family in a representative capacity, and is not intended only for the benefit of the individual who stands in that relation, but for the protection and preservation of the home for the benefit of the family as a whole;" and as to the construction of homestead provisions it likewise declares "the constitutional and statutory provisions of this state declaring as absolutely exempt to the head of a family the homestead as created, defined, and limited by law, are wholesome and salutary regulations, remedial in character, enacted in furtherance of a wise, generous, and humane public policy to encourage the establishment and maintenance of homes, and should be liberally construed with a view of carrying into effect the obvious purpose of their enactment." Still stronger language is used in First International Bank v. Lee, 25 N. D. 197 at page 265, 141 N. W. 716. Our early decisions have been careful to recognize constructive residence as distinguished from actual residence, as sufficient for a basis of claim of homestead. "A tract of land does not necessarily cease to be a homestead, within the meaning of the law, simply because at a particular time there is no house upon it fit to live in. The absence of a house might be explained, and despite such absence it might be made to appear to the satisfaction of a court that the land was a homestead, and that its owners fully intended to rebuild and dwell upon the land as such." Edmonson v. White, 8 N. D. 72–75, 76 N. W. 986. And again, in Brokken v. Baumann, 10 N. D. 455, 88 N. W. 84, quoting from the syllabus: "Before the homestead right attaches to land under such section, there must be *actual or constructive resi-*

29 N. D.—39.

*dence* on the land with a view to making it a home. Mere intention to occupy such land is not sufficient, in the absence of some acts indicative of carrying such intention into immediate execution to some extent." And again in the opinion, p. 459: "This court has held that the presence of a house on the land in all cases at all times is not necessary. . . . The absence of the occupants during the time of rebuilding in such cases is not an abandonment or a forfeiture of homestead rights, and courts will construe efforts and intentions to build on and to *occupy premises liberally."* Some cases heretofore cited are mentioned as supporting its conclusions. Also Smith v. Spafford, 16 N. D. 208, 112 N. W. 965, reads: "A person is not entitled to claim his land exempt as a homestead unless he is residing thereon. . . . 'Residence' under that section, is construed not to mean actual and continuous residence on the homestead." Citing Edmonson v. White, supra. No court has announced the doctrine that the family homestead right cannot attach until actual residence has been begun, when actual residence has in fact followed good-faith preparations for it, even though such preparations extend over a considerable period of time. 21 Cyc. 425d. The showing of the actual residence is but the final step in the proof that the land has possessed a homestead character during the course of the erection of the dwelling for homestead purposes. And in case of doubt, where the acts, as here, are at least as consistent with the good-faith claim of homestead right as of a contrary construction, and where the premises are shown to have been finally occupied by the family, having in mind also that a *constitutional* right guaranteed the *family* is being dealt with and administered or defeated, the doubt should be resolved in favor of the right of homestead, and not against it. Accordingly, it is ordered that the judgment appealed from be reversed and the decree of foreclosure ordered set aside, and the purported mortgage be adjudged void; but that money judgment for the amount due on the notes, with costs of district court, be entered in plaintiff's favor and against the defendants Patrick Sexton and Frank Windmueller; but that no costs be allowed to either party on this appeal.