DETROIT HILTON LIMITED PARTNERSHIP v DEPARTMENT OF TREASURY

Docket No. 71863. Argued January 11, 1985 (Calendar No. 18).— Decided September 5, 1985.

Detroit Hilton Limited Partnership petitioned the Board of Tax Appeals, disputing assessments by the Department of Treasury for delinquent sales, use, and withholding taxes and asserting that it was not the taxpayer responsible for the amounts assessed, but merely the lessor of property to a successor corporation which incurred the liability. The board affirmed. The Court of Appeals, BEASLEY, P.J., and V. J. BRENNAN and WAHLS, JJ., affirmed in an opinion per curiam, holding that if the petitioner had furnished the department with notice, by way of a final tax return, that it had transferred its interest in the business assessed to a new corporate owner, its liability for taxes incurred by its successor would have been severed regardless of whether its successor failed to obtain a sales tax license or used petitioner's license and name in filing tax returns (Docket No. 58004). The petitioner appeals.

In an opinion by Justice RYAN, joined by Chief Justice WILLIAMS, and Justices LEVIN, BRICKLEY, CAVANAGH, and RILEY, the Supreme Court *held:*

Failure of a business taxpayer to file a final tax return upon the transfer of its business to a new corporate entity does not render it liable for sales, use, and withholding taxes incurred by its successor, nor does it estop the taxpayer from denying liability.

1. A business taxpayer cannot be held liable for use, sales, and withholding taxes unless it engaged in the activities which produced the tax liability. The operative provisions of the Sales, Use, and Income Tax Acts impose no tax consequences on lessors of commercial real estate; nor do they impose tax liability as a penalty for failure to file a final tax return.

2. In this case, the petitioner was, at all relevant times, a

REFERENCES FOR POINTS IN HEADNOTES

[1-3] Am Jur 2d, Sales and Use Taxes § 47 *et seq.*

Retailer's or buyer's defenses against exaction of penalties for failure to file, or deficiency in, state or local sales tax return. 20 ALR4th 952.

lessor of commercial property and was not engaged in the business that incurred the liability. The fact that its successor filed tax returns using the petitioner's name and that the department was misled and failed to exercise its right to demand a surety bond of the new corporate entity does not estop the petitioner from denying liability. The only acts or omissions attributable to the petitioner were its failure to file a final tax return when it transferred its business and its silence regarding its successor's representations. In order to establish estoppel by silence, the department would have had the burden of establishing that the taxpayer had actual or constructive knowledge that its successor was filing unified sales, use, and withholding tax returns using the taxpayer's name and tax license number. Because the department did not carry its burden of proof, the petitioner is not estopped from denying liability.

Reversed.

Justice BOYLE took no part in the decision of this case.

125 Mich App 823; 337 NW2d 35 (1983) reversed.

1. TAXATION — CORPORATIONS — TRANSFER OF BUSINESS — TAX LIABILITY.

Failure of a business taxpayer to file a final tax return upon the transfer of its business to a new corporate entity does not render it liable for sales, use, and withholding taxes incurred by its successor (MCL 205.52, 205.93[1], 206.351[1]; MSA 7.552, 7.555[3][1], 7.557[1351][1]).

2. TAXATION — CORPORATIONS — LICENSING AND REGULATION — TAX LIABILITY.

Licensing and registration provisions in the Use, Sales, and Income Tax Acts, while binding upon the parties to whom they are applicable, do not create any tax liability for mere failure to adhere to their requirements (MCL 205.52, 205.93[1], 206.351[1]; MSA 7.552, 7.555[3][1], 7.557[1351][1]).

3. TAXATION — CORPORATIONS — TAX LIABILITY — ESTOPPEL.

A corporate taxpayer that failed to file a final tax return upon the transfer of its business to a corporate successor and that remained silent when the successor used the taxpayer's name and tax license number when filing sales, use, and withholding tax returns was not estopped from denying its liability for taxes incurred by the successor where the Department of Treasury failed to establish that the taxpayer had actual or constructive knowledge of its successor's actions.

*Provizer, Eisenberg, Lichtenstein & Pearlman, P.C.* (by *Marilyn A. Madorsky*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *E. David Brockman,* Assistant Attorney General, for the defendant.

RYAN, J. We are called upon to answer two questions in this case: (1) whether a business taxpayer's failure to file a "final" tax return upon the transfer of its business to a new corporate entity renders the former business owner liable, under the Sales and Use Tax Acts, for the taxes incurred by its successor in business, and (2) whether, on the facts of this case, this petitioner is equitably estopped from denying that it is liable for the taxes in question.

Our answer to both questions is no.

I

Petitioner Hilton is a limited partnership that owns a hotel building located at 1565 Washington Boulevard in the City of Detroit, once known as the Statler Hotel. From July, 1969, through August, 1974, Hilton operated an active, although declining, hotel business on those premises through the services of a management company. During this period, Hilton filed the necessary state tax returns and paid the sales, use, and withholding taxes incurred as a result of the hotel's operations.

In August of 1974, the Detroit Hotel Operating Company, Inc. (DHOC) was created. Hilton's general partner, Fred Gordon, filed DHOC's articles of incorporation and served as its president. Shortly after DHOC's creation, Hilton leased its hotel building and transferred all its operating assets to DHOC.

Thereafter, the only formal relationship between Hilton and DHOC was that of landlord and tenant.

After obtaining a license from the City of Detroit to conduct a hotel business, DHOC operated the Detroit Heritage Hotel in Hilton's building from August of 1974 through October of 1975. During this period, DHOC's controller, Jim Freund, filed monthly sales, use, and withholding tax returns with the respondent Department of the Treasury not in the name of DHOC, but in the name of Hilton, using Hilton's sales tax license number.

Section 3 of the Sales Tax Act, MCL 205.53; MSA 7.523, requires persons subject to that tax to obtain a license from the Department of Treasury, and § 5(a) of the Use Tax Act, MCL 205.95(a); MSA 7.555(5)(a), requires persons subject to that tax to "register with the department." Although DHOC was required to do both, it did neither. Similarly, although § 13 of the Sales Tax Act, MCL 205.63; MSA 7.534,[1] requires persons liable for those taxes to "make a final return within 15 days after the date of selling or quitting business," Hilton did not file such a return or notify the Department of the Treasury that it had transferred the hotel business to a new corporate entity.

From August of 1974 until May of 1975, DHOC filed unified monthly sales, use, and withholding tax returns in Hilton's name and remitted with each return the amount of taxes due. However, beginning in May of 1975 and continuing through October of 1975, DHOC either did not file monthly returns at all, or filed returns without including a remittance of taxes due. By January of 1976, DHOC

---

[1] Section 14 of the Sales Tax Act was repealed by 1980 PA 164, and replaced by provisions now found in § 9(2) of the act, MCL 205.59(2); MSA 7.530(2). 1982 PA 478 added similar provisions to § 11(a) of the Use Tax Act, MCL 205.101a; MSA 7.555(11a).

had filed all tax returns required for operations between May and October of 1975. It did not, however, pay any of the taxes due for that period.

In January of 1976, DHOC's controller, Jim Freund, notified the Department of the Treasury that the tax returns previously filed in the name of Hilton should have been filed in the name of DHOC, and that the department should "correct" its records to reflect this previously undisclosed fact. About this time, DHOC was placed in involuntary bankruptcy.

On March 14, 1977, the Department of the Treasury issued four assessments against petitioner for delinquent sales, use, and withholding taxes totaling $73,960.52, with interest and penalties accrued to that date, for taxes incurred in the operations of the hotel from May through October of 1975. Hilton challenged these assessments before the State Board of Tax Appeals.[2] After a hearing, the board held that "liability for these business taxes" was not "properly transferred" from Hilton to DHOC because Hilton had not notified the Department of the Treasury that it was transferring its business to DHOC. The Court of Appeals affirmed, stating:

> The Department of Treasury is entitled to rely on a sales tax license and tax return filed by a business in determining the party responsible for taxation. If petitioner had furnished respondent with notice by way of a final tax return that it transferred its interest in the hotel to Detroit Hotel Operating Company, its liability for subsequent tax assessments on the registered location would have been severed. Had petitioner filed a final tax return, petitioner, as the transferor of the

[2] The State Board of Tax Appeals has been abolished by 1980 PA 162, as amended by 1981 PA 138. See *Queen Airmotive, Inc v Dep't of Treasury,* 105 Mich App 231; 306 NW2d 461 (1981).

business, would not have been subjected to tax liability in the event that its successor failed to obtain a sales tax license or used petitioner's license and name in filing tax returns. [125 Mich App 823, 829-830; 337 NW2d 35 (1983).]

## II

Before this Court, Hilton argues that it cannot be held liable for these taxes unless it engaged in the activities which produced the tax liability. It claims that the registration and licensing provisions found in the relevant statutes are merely administrative procedures and that, while binding upon parties to whom they are applicable, those statutes do not, in and of themselves, create any tax liabilities for mere failure to adhere to their requirements. We agree.

The record demonstrates that during the entire period for which Hilton has been assessed tax liability for the operation of the hotel business by DHOC, Hilton's only relationship to DHOC and the hotel business was as a landlord. The operative provisions of the relevant tax statutes impose no tax consequences on lessors of commercial real estate. Section 2 of the Sales Tax Act states that sales tax liability is incurred by engaging "in the business of making sales at retail." MCL 205.52; MSA 7.552. See *Sims v Firestone Tire & Rubber Co,* 397 Mich 469, 473; 245 NW2d 13 (1976). Section 3(1) of the Use Tax Act, MCL 205.93(1); MSA 7.555(3)(1), imposes a tax on the "using, storing, or consuming [of] tangible personal property in this state." Section 351(1) of the Income Tax Act of 1967, MCL 206.351(1); MSA 7.557(1351)(1), makes it clear that the so-called "withholding tax" is an obligation imposed only on persons who act as employers. It is uncontroverted that Hilton engaged in none of the activities described in those

statutes, and it is clear that none of the tax obligations described in the statutes apply to mere lessors of real property in which taxable activities might be conducted.

The Department of the Treasury would have us construe those sections of the Sales and Use Tax Acts, which required Hilton to file a "final" tax return when it withdrew from the hotel business and transferred its operations to DHOC, as imposing the penalty of continuing tax liability for DHOC's operations as a penalty for noncompliance with the statutory filing requirements. We decline to do so. As we stated in *In re Dodge Brothers,* 241 Mich 665, 669; 217 NW 777 (1928):

> Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer.

The statutes in question impose no tax liability as a penalty for a taxpayer's failure to file a final tax return.

In contrast to the tax liability sought by the Department of Treasury, the Legislature has provided specific civil and criminal penalties for the failure to file statutorily required returns. In creating these sanctions, the Legislature has chosen the means it deems appropriate for penalizing taxpayers who do not follow the law. Under § 11 of the Sales Tax Act, MCL 205.61; MSA 7.532,[3] and § 10

---

[3] Section 11 of the Sales Tax Act was repealed by 1980 PA 164. These provisions are now contained in MCL 205.24; MSA 7.657(24).

of the Use Tax Act, MCL 205.100; MSA 7.555(10), specific monetary penalties can be imposed for the failure to file a return. Criminal penalties could also be imposed, pursuant to § 24 of the Sales Tax Act, MCL 205.74; MSA 7.545,[4] and § 15 of the Use Tax Act, MCL 205.105; MSA 7.555(15).

There are certain situations where the Sales Tax Act does impose tax liability as a penalty for noncompliance with the statute. Under § 15(2), MCL 205.65(2); MSA 7.536(2), if a corporation fails to file a return, or pay taxes due, personal tax liability may be imposed on the officers having control of, supervision of, or responsibility for the making of tax returns or payments. This imposition of tax liability shows that the Legislature has considered this remedy; it has not applied it as a penalty for failure to file a final tax return upon discontinuance of a business. In the absence of such legislative action, there is no need to judicially impose continuing tax liability in this case.

The Court of Appeals reliance on MCL 205.59(2); MSA 7.530(2) was misplaced. This statutory provision, as well as the comparable provision in the Use Tax Act, MCL 205.101a; MSA 7.555(11a), state that the successor in certain instances can be held liable for taxes unpaid by the predecessor. Neither provision indicates that the predecessor can be held liable for taxes due while the business is operated by the successor.

## III

The Department of the Treasury claims that Hilton's failure to notify the defendant that it was transferring its business to DHOC should estop

---

[4] Section 24 of the Sales Tax Act was repealed by 1980 PA 162. 1980 PA 162 added a similar provision now contained in MCL 205.27; MSA 7.657(27).

Hilton from denying its liability for the taxes in question.[5]

In *Kole v Lampen,* 191 Mich 156, 157-158; 157 NW 392 (1916), this Court stated:

> It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

Also see *Detroit Savings Bank v Loveland,* 168 Mich 163, 172; 130 NW 678 (1911).

If the Department of the Treasury had been notified that Hilton had transferred the hotel business to DHOC, it could have required DHOC to post a surety bond to ensure payment of expected tax liabilities. See MCL 205.53; MSA 7.523. However, the affirmative acts which misled the Department of the Treasury, and which caused it to forego its right to demand a surety bond, were those of DHOC, not Hilton. DHOC was operating the hotel and was using Hilton's name on its tax returns. The only acts or omissions attributable to Hilton are its failure to file a "final" tax return when it transferred the business to DHOC and its silence regarding DHOC's representations.

Although it is true that "[i]f one maintain[s] silence when in conscience he ought to speak, the equity of the law will debar him from speaking

---

[5] In its brief to this Court, the Department of the Treasury cites and discusses authorities which address the subject of "piercing the corporate veil." That subject bears on the liability of shareholders for the obligations of their corporation. Since the Department of the Treasury has offered no evidence to show that Hilton is a shareholder of DHOC, the subject is not relevant.

when in conscience he ought to remain silent," *Michigan Paneling Machine & Mfg Co v Parsell,* 38 Mich 475, 480 (1878) (opinion of COOLEY, J.), it is also true that "unless a person knows there is occasion for him to speak or act, his silence or passivity will not conclude him." *Griffin v Nichols Shepard & Co,* 51 Mich 575, 578; 17 NW 63 (1883) (opinion of GRAVES, C.J.). In order to establish an estoppel by silence, the respondent would have the burden of establishing that the taxpayer had actual or constructive knowledge that DHOC was filing unified sales, use, and withholding tax returns using the taxpayer's name and tax license number. *Cf. Dull v Merrill,* 69 Mich 49, 55-57; 36 NW 677 (1888). It is clear from the record that the respondent failed even to attempt to establish this element of its claim of estoppel.

The facts supporting an estoppel must be clearly made out. *Payne v Payne,* 241 Mich 547, 552-553; 217 NW 56 (1928). Because the respondent did not carry its burden of proof, the petitioner is not estopped from denying its liability for the tax liabilities incurred by DHOC in its operation of the hotel.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, and RILEY, JJ., concurred with RYAN, J.

BOYLE, J., took no part in the decision of this case.