In the Matter of BYRON S. PARDEE et al., Petitioners, v STATE TAX COMMISSION, Respondent.

Third Department, November 4, 1982

**APPEARANCES OF COUNSEL**

*Milbank, Tweed, Hadley & McCloy (Frederick C. Kneip, Andrew J. Connick* and *Joseph M. Persinger* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Francis V. Dow* and *Jeremiah Jochnowitz* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

The facts of this case are not in dispute. Petitioner Byron S. Pardee was a salaried employee of the Chase Manhattan Bank (the bank) or its predecessors, primarily working in one of its New York offices from 1937 until his retirement in 1973. In 1952, the bank established an employee profit-sharing plan, qualified as such under the Internal Revenue Code, funded through a Federally tax-exempt trust to which the bank and its employees contributed, known as

the thrift-incentive plan (the plan). The plan has continued in operation ever since. Participation in the plan is totally voluntary on the part of the individual employee, and requires only that he contribute not less than 2% nor more than 10% of his base salary. The bank's contributions to the trust are keyed to a percentage of its annual net earnings, provided they exceed a given return on capital, and are allocated among all employee participants in proportion to their respective annual salaries. The fund sets up two separate accounts on behalf of each participant, an "allocation account" for bank contributions and a "current deposit account" for the employee's contribution. Additionally, each participant is given five investment program options, reflecting the major alternative individual investment objectives concerning yield, risk, capital appreciation, etc. The funds in each of the respective investment programs are revalued three times annually to reflect increases or decreases in value and income received, and then appropriate credits or debits are made accordingly to each participant's accounts. The participant bears all risk of loss on his selected investment program. Subject to certain limitations imposed for administrative reasons or in order to preserve the plan's qualified tax status, withdrawals of a participant's share in the fund are optional at any time. A participant is always 100% vested in the balance of his current deposit account, and vests in his allocation account at the rate of 5% per year of employment. Premature withdrawal by a participant from the plan by termination of employment or otherwise results in his forfeiture of the nonvested portion of his allocation account, but that portion remains part of the trust and is allocated among the remaining participants. When petitioner Pardee became a participant at the inception of the plan, because of his years of service he was already 70% vested, and he became totally vested by 1957. Thus, from 1957 on he could have withdrawn virtually the full amount of both accounts and, in fact, at different times, made partial withdrawals from both accounts for various extraordinary personal expenses.

Pardee, a resident of New Jersey throughout the pertinent period, retired in 1973. At that time, he was paid an

aggregate of some $65,000 as a lump-sum distribution representing the then current value of his two accounts in the plan. He and his wife filed a joint nonresident New York State income tax return for 1973 in which they reported as income that portion of the distribution representing the aggregate of the bank's contributions, but omitted the portion representing dividends, interest, net gains and appreciation on the investments of his and the bank's contributions. A deficiency notice was thereupon issued to include all income and gains derived from both accounts, on the basis that they constituted deferred compensation. Upon review and after a hearing, respondent commission sustained the notice of deficiency, determining that income and gains arising from the portion of the fund representing the bank's contributions were taxable to petitioners as being derived from New York sources within the meaning of subdivision (a) of section 632 of the Tax Law. Although the commission further determined that income and gains derived from Pardee's personal contributions to the plan (his current deposit account) were not subject to tax, it sustained the full deficiency assessed on the grounds that petitioners failed to prove an accurate allocation of income between the two accounts.

The issue thus presented is whether, upon lump-sum distribution of a nonresident's share of a corporate, employee profit-sharing plan, the income and gains derived from a New York employer's contributions to the plan are includable in New York State adjusted gross income. At the outset, we reject respondent's contention that its determination in the instant case must be upheld if not totally irrational or unreasonable. The issue is not whether petitioners are entitled to a statutory exemption or deduction from income admittedly subject to taxation (see *Matter of Grace v New York State Tax Comm.*, 37 NY2d 193); or the validity of an apportionment formula between New York and non-New York income under administrative construction of a broad statutory term (see *Matter of Condé Nast Pub. v State Tax Comm.*, 51 AD2d 17, mot to dismiss app granted 39 NY2d 942); or the construction of a term for the purpose of computing a use tax (see *Matter of Consolidated Freightways Corp. of Del. v Tully,* 89 AD2d 270 [decided

herewith]). Clearly, the issue is rather "whether property, income, a transaction or event is subject to taxation" (*Matter of Grace v New York State Tax Comm.*, 37 NY2d 193, 196, *supra*). Under these circumstances, and particularly where, as here, the facts are undisputed, the issue is a question of law. " 'The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax' " (*Matter of Grace v New York State Tax Comm.*, 37 NY2d 193, 196, *supra,* citing *Matter of Voorhees v Bates,* 308 NY 184, 188). The commission purports to find the necessary explicit statutory authority to tax such income and gains under subdivision (a) of section 632 of the Tax Law, reasoning that because they arose out of contributions made by a New York financial institution and because the right to participate in the plan was contingent upon continued New York employment, any "items of income [or] gain" realized from participation were "derived from or connected with New York sources" (Tax Law, § 632, subd [a], par [1]). The statute, however, does not permit such an expansive application of the quoted phrase relied upon. Instead, "items of income [or] gain" so derived or connected are specifically defined as and limited to a series of specific forms of income and gain under subdivision (b) of section 632 of the Tax Law. The commission's decision fails to specify which of the statutory categories it found applicable here. Clearly, however, only two of the statutory forms of income and gain could possibly apply, namely (1) income or gain from a business, trade, profession or occupation carried on in this State (Tax Law, § 632, subd [b], par [1], cl [B]), or (2) income from intangible personal property employed in a business, trade, profession, or occupation carried on in the State (Tax Law, § 632, subd [b], par [2]).

Pardee's gains on the investment of the bank's contributions are not taxable under the first category. As the commission correctly found, apart from his employment at the bank, Pardee never engaged in any other trade, business, profession or occupation in New York State. Under the commission's regulations, the income and gains derived from the bank's contributions may then be included

in Pardee's New York adjusted gross income under this category only if they constitute "compensation for personal services entering into his Federal adjusted gross income, but only if, and to the extent that, his services were rendered within New York State" (20 NYCRR 131.4 [b]). Under no commonly accepted meaning of the phrase can such income and gains be considered "compensation for services" rendered to the bank. Once the bank's contribution (upon which Pardee paid a New York tax) was made, the bank completely divested itself of any control over the funds represented thereby. The full risk of loss was borne by the employee. Upon vesting of the bank's contributions through longevity of employment, effective control over disposition had totally passed into Pardee's hands. Uncontestably, whether the investment of the bank's contributions in Pardee's allocation account made or lost money was not in any way related to his performance as an employee; the bank was in no way the source of any gain (or loss). That Pardee's continued employment was required for his continued participation in the plan is insufficient to constitute any investment income as compensation for his services to the bank. The identical nexus existed as to the portion of his participation represented by his own contributions, the gains upon which the commission correctly held not to be taxable. Further negating treatment of these gains as compensation for Pardee's personal services is the language of the regulation to the effect that New York adjusted gross income includes compensation for personal services "entering into his [the employee's] Federal adjusted gross income", thus signifying the commission's intent to conform to Federal tax treatment of employee compensation. In considering analogous transactions in the past, however, the Internal Revenue Service has not treated such gains and income from the employer's contributions to similar plans as additional compensation for personal services rendered (see Int Rev Mem 71, 1952-2 Cum Bull 170; Rev Rul 56-125, 1956-a Cum Bull 627). It has long been our policy to conform to Federal construction of similar tax provisions (*Matter of Marx v Bragalini*, 6 NY2d 322, 333). Based upon all of the foregoing, we conclude that the income and gains on the investment of the

bank's contributions to Pardee's allocation account did not constitute employee compensation for personal services and hence cannot be taxed as income or gains from a business, trade, profession or occupation under section 632 (subd [b], par [1], cl [B]) of the Tax Law.

Equally inapplicable is the statutory inclusion of income from intangible personal property (Tax Law, § 632, subd [b], par [2]). This is expressly limited to instances where the property is "employed in a business, trade, profession, or occupation carried on in this state" (Tax Law, § 632, subd [b], par [2]). Moreover, the property referred to must be the taxpayer's and not his employer's (*Matter of Linsley v Gallman,* 38 AD2d 367, 369, affd 33 NY2d 863). The commission's decision itself includes a finding that Pardee employed no property in any separate trade, business, profession or occupation in New York, and it is unrefutable that the investments attributable to the contributions were not in any way employed in the operation of the bank's business or connected to the rendering of Pardee's personal services. Once again, in terms of its income-producing character, Pardee's allocation account was indistinguishable from his current deposit account, the gains from which the commission ruled did not constitute taxable income from intangible personal property used in a business, trade, profession or occupation carried on in New York.

Since there is no other arguable statutory basis for imposing the tax, the commission's determination should be annulled, with costs, and the matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.

KANE, J. P., MAIN, MIKOLL and WEISS, JJ., concur.

Determination annulled, with costs, and matter remitted to the State Tax Commission for future proceedings not inconsistent herewith.