Remanded for further proceedings consistent with this opinion.

589 A.2d 186

MALCOLM W. McDONALD AND MARY P. McDONALD, PLAINTIFFS–APPELLANTS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 5, 1991—Decided April 12, 1991.

Before Judges ANTELL, SCALERA and KEEFE.

*Henry T. Benedetto* argued the cause for the appellants.

*Julian F. Gorelli*, Deputy Attorney General, argued the cause for the respondent (*Robert J. Del Tufo*, Attorney General of New Jersey, attorney; *Michael R. Clancy*, Assistant Attorney General, of counsel).

The opinion of the court was delivered by

KEEFE, J.A.D.

Plaintiffs, Malcolm W. McDonald and his wife Mary P. McDonald filed a joint New Jersey gross income tax return and were assessed a New Jersey income tax based upon a determination by defendant, Division of Taxation, that plaintiff was a

resident of New Jersey in 1985 when he received a distribution from his profit sharing plan upon retirement of $6,460,999.[1] Plaintiff challenged his gross income tax assessment and the Tax Court, in a reported opinion at 10 *N.J.Tax* 556 (Tax Ct. 1989), held that plaintiff was a nonresident tax payer for 1985, as plaintiff maintained, but the entire lump-sum distribution from his New Jersey employer's profit sharing plan was taxable to him as a nonresident.

On appeal, plaintiff first contends that the excess of the lump-sum distribution over employer contributions that he received from the profit sharing plan is not New Jersey source income and, therefore, not taxable as gross income. Second, plaintiff maintains that the portions of the employer's contributions to the plan and other deferred income received in 1985 which were attributable to services rendered by him outside New Jersey are not New Jersey source income and not subject to New Jersey gross income tax. Third, plaintiff asserts that the amount credited to the profit sharing account prior to, and vested as of, July 1, 1976 (the effective date of the Gross Income Tax Act) was "earned" prior to the effective date of the act and, thus, not subject to New Jersey Gross Income Tax. Fourth, plaintiff argues that the lump-sum distribution and other deferred income were received when there was insufficient nexus with New Jersey for the imposition of New Jersey gross income tax. These were the same issues presented to the Tax Court and decided adversely to plaintiff.

For the reasons stated herein, we find merit only in plaintiff's second contention. Thus, we hold that the portion of the employer's contributions to the profit sharing plan and other deferred income attributable to services rendered by a taxpayer outside New Jersey is not New Jersey source income and, thus,

---

[1] Although Malcolm W. and Mary P. McDonald are joint parties to this proceeding, all the activities at issue in regard to taxable income are those of Malcolm W. McDonald. Because all of the briefs and the Tax Court opinion refer to plaintiff in the singular, we also will maintain that designation.

is not subject to New Jersey gross income tax. However, we affirm the remainder of the judgment under review substantially for the reasons stated by Judge Rimm in his opinion.[2]

As indicated above, plaintiff maintains that the portions of his employer's contributions to the profit sharing plan and other deferred income received by him in 1985 which was attributable to services rendered by him outside New Jersey are not New Jersey source income and thus not subject to gross income taxation. The Tax Court judge's ruling on this issue was as follows:

> Plaintiff was on the cash basis for income tax purposes in 1985. It is beyond dispute that his income is to be taxed in accordance with its nature in the year of receipt. *Smoyer v. Taxation Div. Director*, 4 *N.J.Tax* 42 (Tax Ct.1982), [*aff'd* o.b. 6 *N.J.Tax* 251 (App.Div.1982),] *aff'd* 95 *N.J.* 139, 469 *A.2d* 920 (1983); *DuBois v. Taxation Div. Director*, 4 *N.J.Tax* 11 (Tax Ct.1982), *aff'd* [o.b.] 6 *N.J.Tax* 249 (App.Div.1982).
>
> There is no evidence before me that plaintiff performed any services outside of New Jersey for NTD in 1985. The resolution, therefore, of this issue is that, since plaintiff's contention is based on his status as a nonresident in 1985 when he received payment from the profit sharing plan and since he did not engage in any occupation without the State in 1985, he does not come under the provisions of *N.J.S.A.* 54A:5–7.

10 *N.J.Tax* at 580.

Plaintiff claims that the trial judge erred in his reliance on *Smoyer, supra,* and *DuBois, supra.* We agree. Neither *Smoyer* nor *DuBois* dealt with the source or the character of the income in question in those cases. They addressed the meaning of the word "earned" for purposes of *N.J.S.A.* 54A:9–27. Thus, the opinion of the trial court appears to have confused an issue concerning when income is received and must be reported with the issue presented here concerning the source

---

[2]*N.J.S.A.* 54A:5–5 which provided, at the time relevant to this case, that "[t]he income of a nonresident individual shall be that part of his income derived from sources within this State …," was amended by L.1989, c. 219, § 1, effective retroactively to January 1, 1989. As a result of the amendment, pension income derived from New Jersey sources by a nonresident is now exempt from New Jersey gross income tax.

of the income. Neither of those cases discusses non-New Jersey source income.

The Tax Court decision on this point is also contrary to the reasoning found in *Attorney General Formal Opinion* No. 5–1979. In that opinion, the Attorney General was asked whether pension income received by a nonresident of New Jersey was subject to the Gross Income Tax Act. The Attorney General stated: "It is clear ... that the Legislature has imposed the tax upon all pension and annuity income. The only question is whether a pension income recipient is exempted from the income tax because he or she is no longer a resident of New Jersey." The Attorney General relied on *N.J.S.A.* 54A:5–5 which states: "[t]he income of a non-resident individual shall be that part of his income derived from sources within this State as defined in this act." Next, he turned to *N.J.S.A.* 54A:5–8 for the definition of "income derived from sources within New Jersey," which includes

Compensation, net profits, gains, dividends, interest or income enumerated and classified under chapter 5 of this act to the extent that it is earned, received or acquired from sources within this State:

.    .    .    .    .    .    .    .

2. In connection with a trade, profession, occupation carried on in this State or for the rendition of personal services performed in this State; ...

Thus, although the Attorney General did not specifically state that allocation of pension income is necessary, his statements support the argument for allocation, so that only income "earned, received or acquired from sources within New Jersey" is taxed.

It is also persuasive, though not binding on us, that defendant does not agree with the trial court's resolution of this issue. Defendant states in its brief:

To the extent that the distribution and other disputed income constitutes compensation for services performed in prior years by plaintiff outside of New Jersey, it is defendant's position that such income does not constitute New Jersey source income and is therefore not subject to tax under the GIT (gross income tax) pursuant to *N.J.S.A.* 54A:5–8.

.    .    .    .    .    .    .    .

Defendant's position, moreover, is that allocation would be permissible notwithstanding that plaintiff performed no services outside of New Jersey during tax year 1985, the year the income was received. (citation omitted). The key inquiry is whether any of the services rendered by plaintiff as a resident in prior years—for which plaintiff is now being compensated as a nonresident in 1985—were actually performed outside of New Jersey.

Defendant's interpretation of the statute is supported by an opinion from the Division of Taxation published in *State Tax News* which addressed allocation of nonresident pension income from inside and outside New Jersey:

Allocation of nonresident pension income from both within and outside of New Jersey—under *N.J.S.A.* 54A:5-8, pension income received by nonresidents resulting from work performed in New Jersey is income derived from sources within this State and is subject to the New Jersey income tax.

Where a nonresident receives pension income that is attributable to services performed within and outside New Jersey, the pension income is taxable to the extent that such income results from services performed in New Jersey. The pension income subject to this State's income tax is determined by multiplying the pension received by the following fraction:

Time Employed Within New Jersey

Time Employed Both Within and Outside New Jersey

The Division intended that the nonresident taxpayer use a representative sampling in calculating the New Jersey portion of the pension distribution. Therefore, the Division will consider the use of the average days in and days out for the current tax year and the three preceding tax years as a representative sampling.

*Personal Income,* State Tax News, July/Aug. 1984.

█ We are persuaded from our review of the statute and the arguments made by respective counsel, as well as defendant's prior interpretation of the statute, that the Tax Court erred on the allocation issue relative to the employer's contribution to the profit sharing plan and other deferred income received in New Jersey attributable to work performed by the taxpayer outside New Jersey.

█ Although defendant agrees with plaintiff's interpretation of the statute on this issue, defendant argues that there is insufficient evidence in the record to support the allocation requested by plaintiff. Defendant refers to plaintiff's answers to interrogatories 29 and 42, where requests were made for

information and documents relating to the amount of time plaintiff worked outside of New Jersey. Interrogatory 42 asked for "a schedule showing where the McDonalds spent each day during 1984 through 1987 whether in or outside of New Jersey" and asked for documentation to support whatever allocation was made. Plaintiff answered:

The response of this interrogatory is based on an effort to account for the verifiable days the McDonalds spent outside the State of New Jersey during the year 1985. To the Plaintiffs' best knowledge 1985 is a representative year for the years that followed 1985. For the 1984 year Mr. McDonald was serving as president of National until July 1st of that year and would have had fewer days in Florida in the early part of the year.

Defendant contends that this answer was non-responsive. Indeed it was. However, the answer may also reflect a misunderstanding of the nature of the inquiry. It is clear from the answer that the taxpayer believed that he was addressing the question of whether he was or was not a resident of New Jersey in 1985. That was a critical issue at the trial. The State hotly contested plaintiff's assertion that he was a nonresident in 1985.

Interrogatory 29 asked plaintiff to identify the portion of his "working time at National spent outside N.J. and [ ] the places and purposes of such out-of-state assignments." Plaintiff responded:

Best estimates indicate Mr. McDonald spent 20–25% of his working time at National outside New Jersey.

From March 1948 to October 1954 Mr. McDonald was living and working for National (then Von Hoffmann Corporation) in the State of Massachusetts. The Von Hoffmann Corporation was headquartered in St. Louis, Missouri. Mr. McDonald moved to, and worked for National in, the State of New Jersey beginning in October, 1954. Mr. McDonald became an officer and Director of Von Hoffmann in 1960. In 1969 National became an independent Company headquartered in New Jersey and in 1976 National was acquired by, and became a subsidiary of, Tel–Direct, a company headquartered in Montreal, Canada.

Mr. McDonald's work while a salesman, officer and director required him to visit telephone companies outside the State of New Jersey, attend executive and Board meetings in St. Louis, Missouri and Montreal, Canada, attend annual United States Telephone Associates meetings and Great Lakes PUC meetings

at various locations outside the State of New Jersey and attend semi-annual American Telephone and Telegraph seminars outside the State of New Jersey.

At trial, plaintiff's counsel attempted to elicit more specific information from plaintiff concerning the time spent outside of New Jersey for the purpose of allocating his income. Plaintiff answered:

> Well, in preparation for this trial I went over that, and I would say it would be a minimum of fifty days a year that I would spent (sic) out of the State of New Jersey.

When defendant cross-examined plaintiff on that issue and asked him why he had not supplied more specific information relative to the years 1984 through 1987, the plaintiff replied: "I don't know how anybody in God's world could ever account for every day from 1984 through 1987."

Defendant argues that the Tax Court judge found this testimony to be insufficient to support allocation. We find no such statement by the judge in his opinion. Indeed, when defense counsel pressed the plaintiff during cross-examination for further details referring to his activities in the years 1984 to 1987, the Tax Court judge said: "I don't care what the interrogatories say about '84, '86 and '87." It is clear from that statement and his opinion that the Tax Court judge simply believed that it was plaintiff's status at the time he received the deferred compensation, 1985, that was relevant to the issue, and, thus, disregarded any evidence concerning plaintiff's activities in prior years. The judge said:

> There is no evidence before me that plaintiff performed any services outside of New Jersey for NTD in 1985. The resolution, therefore, of this issue is that, since plaintiff's contention is based on his status as a nonresident in 1985 when he received payment from the profit sharing plan and since he did not engage in any occupation without the State in 1985, he does not come under the provisions of *N.J.S.A.* 54A:5–7.

*McDonald, supra,* 10 *N.J.Tax* at 580. Thus, we are satisfied that the Tax Court judge did not decide the sufficiency of plaintiff's evidence on the issue of allocation for the three years prior to 1985.

It may be that the Tax Court judge would find that plaintiff's testimony concerning the time spent out of New Jersey would be accepted as credible evidence. The judge made the following comment concerning plaintiff's credibility.

> Mr. McDonald, you may step down. I want to tell you that I appreciate your testimony. Your appearance here in my Court was like a breath of fresh air. I very rarely get witnesses who I deem to be as credible as you are.

However, we decline to hold, as plaintiff urges us, that his testimony was sufficient to support his claim of allocation as a matter of law. Defendant's effort to cross-examine him on his claim, as we noted earlier, was restricted by the trial judge's ruling on relevancy grounds. Further, although the judge may have found plaintiff to be credible, he has not addressed the question of whether the evidence presented on this issue is sufficient to support the taxpayer's claim for allocation.

Thus, we remand the matter to the Tax Court for further proceedings consistent with a development of this issue. In light of our clarification of the legal principles which undergird the issue, plaintiff may be permitted to expand the record if he so chooses. Defendant, in turn, should be permitted to cross-examine fully on plaintiff's claim for allocation. The Tax Court may enter any discovery orders it deems necessary to have the matter presented in an orderly and complete fashion.

As modified, the judgment of the Tax Court is affirmed.