MOLTER v DEPARTMENT OF TREASURY

Docket No. 93747. Argued March 2, 1993 (Calendar No. 6). Decided
September 2, 1993.

Albert J. Molter brought an action in the Court of Claims against
the Department of Treasury, contending that distributions of
deferred compensation and interest earned on the deferred
compensation made in accordance with a Michigan state em-
ployee deferred compensation plan while he was a resident of
Florida were not subject to Michigan income tax. He argued
further that, because the department made no effort to collect
income tax from former residents who received distributions
from private employer deferred compensation plans, the with-
holding of income tax from his distributions was violative of
the Equal Protection and Uniformity of Taxation Clauses of the
Michigan Constitution. The court, Peter D. Houk, J., deter-
mined that deferred compensation and the interest earned on it
are subject to Michigan income tax, but that the department's
practice of withholding state income taxes from distributions to
nonresident former state employees violated the state constitu-
tion. The Court of Appeals, NEFF, P.J., and GRIBBS and
MURPHY, JJ., while agreeing that deferred compensation and
the interest earned on it are taxable under Michigan law, held
that the plaintiff's equal protection rights had not been viola-
ted (Docket No. 125786). The plaintiff appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice
CAVANAGH, and Justices LEVIN, BRICKLEY, and BOYLE, the
Supreme Court held:

Distributions from an Internal Revenue Code § 457 deferred
compensation plan received by a former state employee that
represent compensation for personal services rendered in Mich-
igan are subject to Michigan income tax regardless of the
residency of the taxpayer. Interest earned on the principal of
the § 457 plan that is received as part of taxable income while
the taxpayer is not a resident of Michigan is not subject to

REFERENCES

Am Jur 2d, Pensions and Retirement Funds § 127; State and Local
Taxation §§ 191, 196, 491, 494, 508.

See ALR Index under Income Tax; Pension and Retirement.

Michigan income tax. The practice of the Department of Treasury of withholding income taxes on § 457 plans, but not in connection with certain private plans does not violate the principle of equal treatment of similarly situated taxpayers or render the tax unconstitutional under the Uniformity of Taxation Clause.

1. The state may impose a tax only if it is expressly authorized by law. The authority to tax will not be inferred.

2. Under the Michigan Income Tax Act, the income of a nonresident is allocated to the state if it is earned, received, or acquired for the rendition of personal services performed in Michigan. The money contributed to a § 457 deferred compensation plan is a portion of wages earned as an employee of the state; it does not cease to be compensation for personal services because disbursement was deferred or because it was invested before disbursement. Distribution of contributions made to a deferred compensation plan are taxable income under the MITA in the year they are received.

3. Interest income of a nonresident is not subject to Michigan income tax regardless of its source. Thus, interest earned on the principal in a § 457 plan is not taxable under the Michigan Income Tax Act if the taxpayer is not a resident during the year in which the interest is received.

4. The Michigan Income Tax Act requires the withholding of taxes from wages as defined by the Internal Revenue Code, including the distributions of § 457 plans. Withholding is not authorized from distributions not defined as wages to nonresidents, such as deferred compensation plans established by private employers. Distributions from both types of plans are subject to Michigan income tax, however, and a failure to withhold taxes from distributions from private plans does not negate the underlying tax liability. Employing different methods to collect the same tax does not render the tax unconstitutional.

Affirmed in part, reversed in part, and remanded.

Justice RILEY, joined by Justice MALLETT, concurring in part and dissenting in part, stated that the operative factor in determining when the state may tax interest income is the termination of deferral status of a § 457 plan. At that point, the balance of any deferred compensation, together with any capital appreciation, becomes the unrestricted property of the plan participant. Interest accrued thereafter would be taxable under state law as interest income.

193 Mich App 421; 484 NW2d 702 (1992) affirmed in part and reversed in part.

1. Taxation — Income Tax — Deferred Compensation — Nonresidents.

Distributions of contributions to an IRC § 457 deferred compensation plan received by a former state employee that represent compensation for personal services rendered in Michigan are subject to Michigan income tax regardless of the residency of the taxpayer (26 USC 457; MCL 206.110[2][a]; MSA 7.557[1110][2][a]).

2. Taxation — Income Tax — Deferred Compensation — Interest.

Interest earned on the principal of an IRC § 457 deferred compensation plan that is received as part of taxable income while the taxpayer is not a resident of Michigan is not subject to Michigan income tax (26 USC 457; MCL 206.110[2][a], 206.113; MSA 7.557[1110][2][a], 7.557[1113]).

*Ronald A. Molter* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Russell E. Prins* and *Ross H. Bishop,* Assistant Attorneys General, for the defendants.

Griffin, J. We must decide whether distributions from a deferred compensation plan, paid to a nonresident, are subject to the state's income tax if the original contributions to the plan represented earnings from employment in Michigan. Affirming a decision of the Court of Claims, the Court of Appeals ruled that distributions from such a plan are taxable. We affirm in part and reverse in part.

I

Plaintiff Molter, while a State of Michigan employee, participated in a deferred compensation plan qualified under § 457 of the Internal Revenue Code (IRC).[1] He began receiving distributions from his plan account in 1982, two years after his retirement. Pursuant to § 351 of the Michigan

---

[1] 26 USC 1 *et seq.*

Income Tax Act, as amended (MITA),[2] MCL 206.1 *et seq.*; MSA 7.557(101) *et seq.,* the State of Michigan withheld state income taxes from those distributions.[3]

On January 1, 1983, plaintiff moved to Florida, and he has maintained his residency there since that date. Even though plaintiff moved, the state continued to withhold state income taxes from plaintiff's distributions. Plaintiff protested the withholdings and requested an informal hearing. At that hearing, the referee denied plaintiff's claim for a refund of the taxes.

Shortly thereafter, plaintiff initiated this action in the Court of Claims, contending that distributions made in accordance with the plan to nonresidents of deferred compensation and interest earned on deferred compensation are not taxable under the MITA. In addition, plaintiff raised an equal protection claim, arguing that the Michigan Department of Treasury had made no effort to collect state income taxes on the deferred compensation of former residents who worked for private employers, but "has adopted the policy and practice of taxing the Deferred Income of only those non-residents who were formerly State Employees . . . ."

Upon cross motions for summary disposition,[4] the Court of Claims determined that deferred com-

---

[2] Section 351(1) provides, in part:

Every employer in this state required under the provisions of the internal revenue code to withhold a tax on the compensation of an individual, except as otherwise provided, shall deduct and withhold a tax . . . .

[3] Under § 3401, federal income taxes also are withheld from distributions from a § 457 deferred compensation plan.

[4] Plaintiff's motion for summary disposition was filed pursuant to MCR 2.116(C)(8); defendant's motion for summary disposition was filed pursuant to MCR 2.116(C)(10).

pensation and the interest earned on that compensation, paid to a retiree while a nonresident, are subject to the Michigan income tax. The court further determined that the Department of Treasury's practice of withholding state income taxes only from former state employees violated the Equal Protection and Uniformity of Taxation Clauses of the Michigan Constitution.[5] However, finding the department's practice to be unintentional, the court awarded plaintiff no refund of past amounts withheld; instead, the department was enjoined from withholding state income taxes with respect to future distributions to plaintiff.

Both parties appealed, and the Court of Appeals agreed with the Court of Claims that both the deferred compensation and the interest earned on that compensation are taxable under Michigan law. However, the panel disagreed that plaintiff's equal protection rights had been violated, concluding that "there is no failure to equally tax similarly situated entities. The only difference occurs in the time or method of collection." 193 Mich App 421, 429-430; 484 NW2d 702 (1992).

We granted plaintiff's application for leave to appeal. 441 Mich 878 (1992).

II

A deferred compensation plan implemented under § 457 of the IRC permits an employee to set aside a portion of earnings in a savings program before those earnings are taxed. Section 457(a) provides that, for purposes of the federal income tax, compensation deferred under such a plan is not taxed in the year it is earned, but "shall be includible in gross income only for the taxable year in which such compensation or other income

_____
[5] Const 1963, art 1, § 2, art 9, § 3.

is paid or otherwise made available to the participant or other beneficiary."

The MITA adopts the federal definition of gross income and likewise imposes a tax on deferred compensation when it is disbursed to an employee. Section 28 of the MITA provides: " 'Taxable income' or 'net income' means, unless specifically defined otherwise in this act, taxable income as defined in the internal revenue code for the subject taxpayer for federal income tax purposes . . . ."

Even though the MITA adopts the federal definition of taxable income, the state and federal income tax schemes are not identical as applied to nonresidents of the State of Michigan. Under § 30(i) of the MITA, a taxpayer's income is subject to "[a]djustments resulting from the allocation and apportionment provisions of chapter 3." Pursuant to chapter 3, the income of a nonresident is allocated to this state if it is "earned, received, or acquired . . . [f]or the rendition of personal services performed in this state." MCL 206.110(2)(a); MSA 7.557(1110)(2)(a).[6]

Plaintiff contends that the distributions he has received since becoming a resident of Florida are not taxable under the MITA because those payments have not been earned for the rendition of personal services performed in this state. Plaintiff presents two arguments in support of this proposition. First, he maintains that the distributions he has received from the plan represent investment

_____

[6] Section 110(2)(b), not applicable to this case, also allocates nonresident income to this state if it is

a distributive share of the net profits of a business, profession, enterprise, undertaking, or other activity as the result of work done, services rendered, or other business activities conducted in this state, except as allocated to another state pursuant to the provisions of sections 111 to 114 and subject to the credit provisions of section 256.

income, not compensation for personal services rendered in the state. Second, plaintiff argues that even if the distributions represent compensation for services rendered, they do not represent compensation for any services rendered in the taxable year in which they were received. We shall consider each of these arguments in turn.

A

The state may impose a tax only if the tax is expressly authorized by law. The authority to tax will not be inferred. *In re Dodge Bros,* 241 Mich 665, 669; 217 NW 777 (1928); *Detroit Hilton v Dep't of Treasury,* 422 Mich 422, 428; 373 NW2d 586 (1985); 3A Singer, Sutherland Statutory Construction (5th ed), § 66.01, p 1. Here, defendant finds authority to tax plaintiff's deferred compensation in § 110(2) of the MITA. As already noted, that section provides:

> For a nonresident individual . . . all taxable income is allocated to this state to the extent it is earned, received, or acquired, in 1 or more of the following ways:
> (a) For the rendition of personal services performed in this state.

This section is unambiguous. It allocates to this state all of the taxable income of a nonresident that has been earned for work performed in Michigan. Even so, plaintiff argues that § 110(2) does not apply to distributions from a 457 plan. He maintains that the distributions he receives from the plan represent income earned on investments rather than income for the rendition of personal services. Because contributions were made to the plan under § 457, they became the property of the state; the state then invested the funds, and they

are, and have been, subject to loss. Thus, plaintiff argues, funds in the plan are an investment, and the distributions he receives are simply returns on that investment. We disagree.

The money that plaintiff contributed to his 457 plan was a portion of the wages he received as an employee of the State of Michigan. It is undisputed that as a state employee he performed personal services in Michigan. Thus, his contributions clearly were earnings for "personal services performed in this state." They did not cease to be compensation for personal services simply because disbursement was deferred or because they were invested before disbursement.

Closely analogous is the situation presented in *Michaelsen v New York State Tax Comm,* 67 NY2d 579; 505 NYS2d 585; 496 NE2d 674 (1986). In *Michaelsen,* the taxpayer, a resident of Connecticut, was granted options to buy stock at a certain price in connection with his employment in New York. He did not exercise those options when they were granted; rather, he exercised them several years later, presumably after the fair market value of the stock was greater than the option price.

In assessing the taxpayer's New York income tax liability, the *Michaelsen* court followed the federal approach,[7] and held that the income earned from the stock options was not recognized for tax purposes until the stock was sold. Moreover, the court determined that the delay between the realization of income from the stock option (the purchase of the stock) and the recognition of

[7] Under the IRC, the taxable income attributable to a stock option is the difference in value between the market price of the stock and the option price of the stock when the option is exercised. *Id.* at 583. However, as with deferred compensation, this income is not recognized for federal tax purposes until actually received, i.e., when the stock is sold. *Id.*

that income for tax purposes (the sale of the stock) had no effect on the authority of New York to tax the income, even though the compensation was invested during the delay. Instead, the court held that the income the nonresident taxpayer received when he sold the stock remained compensation "attributable to [the taxpayer's] 'business, trade, profession or occupation carried on in [New York]' and therefore taxable in New York . . . ." *Id.* at 584. See also *Pardee v New York State Tax Comm,* 89 AD2d 294; 456 NYS2d 459 (1982) (the portion of a lump sum distribution from a nonresident employee's profit-sharing plan that represented contributions made by the taxpayer's employer was taxable as income by New York); *Gosewisch v Dep't of Revenue,* 40 Pa Commw 565; 397 A2d 1288 (1979) (distributions from an employee profit-sharing plan were treated as compensation for services rendered in the year received, not as income from the disposition of personal property).

Likewise, the deferred compensation set aside by plaintiff in this case remains income for the rendition of personal services performed in Michigan, even though it was contributed to a 457 plan.

B

Plaintiff alternatively argues that, even if the distributions represent compensation for services rendered, they do not represent compensation for any services rendered in the taxable year in which they were received. Plaintiff maintains that he cannot be required to pay state income taxes on distributions unless he works in Michigan during the year in which the distributions are received.

For support, plaintiff relies on *Destito v Comm'r of Revenue,* 23 Mass App 977; 503 NE2d 986 (1987). There, the plaintiff was employed for many

years at a federal military base in Massachusetts. Throughout his employment, he was a resident of New Hampshire. Just over a year before his retirement, the plaintiff became ill and did not work for fourteen months. Subsequently, he retired and received a lump sum representing accumulated sick pay and annual leave time. Massachusetts attempted to tax the lump sum, but the court determined that it was not taxable in Massachusetts. Although this lump-sum disbursement represented benefits accumulated as a result of the plaintiff's labor in Massachusetts, the court held that the year in which those benefits were paid was dispositive: "Section 5A [of the Massachusetts act] does not expressly tax a nonresident's income from employment if in the taxable year of its receipt the nonresident has not worked in Massachusetts." *Id.* at 978. Because the plaintiff did not work in Massachusetts during the year in which the lump sum was paid to him, it was not taxable.

Plaintiff here urges this Court to adopt the logic and analysis of the Massachusetts court. He maintains that no services were performed in Michigan after he became a Florida resident in 1983; thus, none of the income received after January 1, 1983, is properly allocable to Michigan as income earned here. Again, we disagree.

As above noted, the MITA defines taxable income in reference to federal taxable income. MCL 206.28; MSA 7.557(128). Moreover, § 2 of the MITA provides:

(2) Any term used in this act shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. Any reference in this act to the internal revenue code shall include other provi-

sions of the laws of the United States relating to federal income taxes.     '

(3) It is the intention of this act that the income subject to tax be the same as taxable income as defined and applicable to the subject taxpayer in the internal revenue code, except as otherwise provided in this act. [MCL 206.2; MSA 7.557(102).]

In light of the clear legislative intent to adopt the federal approach to calculating taxable income, we conclude that the MITA authorizes taxation of income received in one year for services rendered in an earlier year, just as the IRC authorizes taxation of income received in one year but earned in an earlier year. Deferred compensation is considered taxable income under the IRC in the year that it is disbursed to an employee. Thus, it is taxable income for purposes of the MITA in that same year.

Indeed, an attempt to tax deferred compensation before a taxpayer is entitled to that compensation would run afoul of the established rule that "for a cash basis taxpayer, income is realized, and hence taxable, when actually or constructively received." *Wackerman v Michigan,* 47 Mich App 228, 234; 209 NW2d 493 (1973); see also *Cook v Dep't of Treasury,* 396 Mich 176, 182; 240 NW2d 247 (1976). Here, the deferred compensation was not actually or constructively received before plaintiff's retirement. Further, under the terms of the plan, none of the contributions made to the deferred compensation plan were available to a participant before retirement or termination of employment except in the event of "extreme financial emergency."[8] For these reasons, we agree with the lower courts that the distributions paid to plaintiff representing contributions he made to a

[8] Deferred Compensation Plan Regulations, § 8.2(C).

deferred compensation plan are taxable income under the MITA in the year they are received.

### III

Plaintiff next contends that even if the amount of his disbursements representing deferred compensation is taxable, the amount of his disbursements representing interest earned on that compensation is not taxable.[9] He argues that the interest income of a nonresident is not taxable by Michigan, regardless of its source. Plaintiff cites § 113 of the MITA, which provides:

> Interest and dividends are allocable to this state *if the taxpayer is a resident . . . individual of this state* or has a commercial domicile in this state. [Emphasis added.]

The Court of Appeals rejected plaintiff's argument. Agreeing with the Court of Claims, the panel held: "[I]nterest that accrued on the contributions to the 457 plan while plaintiff was a resident of Michigan was subject to Michigan income tax, despite the fact that it was distributed while plaintiff was a resident of Florida." 193 Mich App 427. The panel found authority for its conclusion in § 113 of the MITA, which, according to the panel, "governs interest *accrued* while a resident . . . ." *Id.* (Emphasis added.)

Although we agree with the Court of Appeals that deferred compensation originally earned for the rendition of personal services is taxable income as defined in the MITA, we disagree that the act provides authority for taxing the interest income of a nonresident, whatever its source. As

---

[9] Plaintiff contends in his complaint that his contributions to the plan were exhausted by March 1, 1986, and that all distributions paid to him after that date reflect interest earned by the principal.

already noted, the authority to tax will not be inferred, but must be expressly provided in the constitution or by statute:

Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer. [*In re Dodge Bros, supra,* 241 Mich 669.]

As we read the plain language of § 113, we see no authority to tax the interest income of a nonresident. This section does not set forth the taxability of interest that accrues while one is a resident; instead, it simply addresses the proper allocation of taxable interest income received by a taxpayer in a given tax year. In conjunction with § 110, § 113 allocates taxable interest income to this state "if the taxpayer is a resident."

Under § 457 of the IRC, interest earned by the principal in a 457 plan is not taxable income in the year that it accrues. Rather, it is taxable income "only for the taxable year in which such [interest] is paid or otherwise made available to the participant or other beneficiary."

Here, according to his complaint, plaintiff did not receive any of the interest earned by the principal in his 457 plan account before he became a Florida resident. In addition, none of the funds in his account were "otherwise made available" to him before he actually received them. The terms of the plan specified that none of the amount in plaintiff's plan account was available for plaintiff's use before his retirement or termination

of employment except in the event of "extreme financial emergency."[10]

Accepting plaintiff's allegations as true, we conclude that he would have no state income tax liability on his interest income under § 113 of the MITA. To be allocable to this state, interest income must be received or actually available to a taxpayer while he is a resident.[11]

Further, we disagree with the dissent that interest earned on deferred compensation is taxable under § 110 of the MITA. The dissent reaches its conclusion on the basis that the interest earned on deferred compensation is not "true interest," *post,* p 558; rather, it is "income attributable to services rendered within the state . . . ." *Id.* at 557. The dissent contends, therefore, that interest income is taxable under § 110 of the MITA as compensation for the rendition of personal services, as if it were wages paid to an employee by an employer.

As authority for its argument, the dissent relies on the following language in § 457 of the IRC:

"[A]ny amount of compensation deferred under the plan, and any income attributable to the amounts so deferred, shall be includible in gross income only for the taxable year in which such compensation or other income is paid . . . ." [*Post,* pp 556-557.]

This language is read to mean that "any contributions to a § 457 plan, as well as any capital gains

[10] See also 26 CFR 1.457-1. Funds in a 457 plan are not considered "available" for federal income tax purposes merely because the taxpayer chooses among various investment modes or elects to receive those funds in monthly installments.

[11] Our approach is consistent with the approach taken by courts in New York, which have refused to tax interest income of nonresidents that was earned on employee benefits such as profit-sharing plans or stock options, even though the benefits themselves were taxed as compensation. See *Pardee* and *Michaelsen, supra.*

or interest earned thereon, are part of the corpus that is taxable for federal purposes." *Post,* p 557.

We do not quarrel with this conclusion, because it is obvious that the federal government treats interest earned on deferred compensation as part of a taxpayer's gross income. However, we fail to see how that fact supports the conclusion the dissent extrapolates from the language of § 457— that the interest earned on deferred compensation should be treated under the MITA as compensation for personal services rendered in this state instead of as interest earned on an investment.

Federal taxable income is a broad category that includes income from "whatever source derived." See IRC, §§ 61, 63. Under the IRC, both compensation for services and interest income are treated as taxable income. In contrast, the MITA does not include interest income as part of a nonresident taxpayer's income. Instead, as explained above, the MITA allocates to this state only that portion of a nonresident's income that is earned for the rendition of personal services in this state. Thus, to conclude that a particular source of income is taxable in Michigan simply because it is "part of the corpus that is taxable for federal purposes," ignores the allocation and apportionment provisions of the MITA. *Post,* p 557.

Nothing in the IRC, or in the arguments presented in this appeal, persuades us that the interest plaintiff earned on his deferred compensation should be treated as compensation attributable to services performed in this state. Contrary to the assertion of the dissent, interest does not transform and become compensation for services rendered simply because its disbursement is delayed, any more than, as plaintiff earlier claimed, deferred compensation transforms and becomes interest simply because its disbursement is delayed.

Each represents a "distinct accretion"[12] to a taxpayer's income,[13] and it is clear that the Legislature intended to treat each accretion differently. Compensation for personal services rendered in Michigan is taxable regardless of the residency of the taxpayer; interest income is not taxable under the MITA if the taxpayer is not a resident during the year in which he receives the interest.

IV

Plaintiff's remaining claim is a constitutional challenge to the collection procedures of the Department of Treasury. He contends that the department does not treat all former residents who receive distributions from deferred compensation plans equally. Former residents who worked for the state find that state income taxes are withheld from their distributions, but former residents who worked for private employers have no state income taxes withheld from their distributions. Plaintiff further argues that the state makes no effort to collect income taxes from nonresidents receiving distributions from private employer deferred compensation plans, effectively forgiving the tax on those nonresidents. Thus, "the effect of this policy and practice is that only former State employees are taxed."

---

[12] See *Michaelsen, supra,* 67 NY2d 584.

[13] We are likewise unpersuaded by the reasoning of the New Jersey tax court in *McDonald v Director, Div of Taxation,* 10 NJ Tax 556 (1989), modified on other grounds 247 NJ Super 326; 589 A2d 186 (1991). Although the issue in *McDonald* was similar to the issue presented here, the New Jersey income tax law differs significantly from the MITA. In contrast to the MITA, the New Jersey tax statute allocates nonresident income to New Jersey if it is " '[c]ompensation, net profits, *gains, dividends, interest or income*' " that is " 'earned, received or acquired *from sources within this State.*' " *Id.* at 330. (Emphasis supplied.) The relevant tax law of New Jersey is much broader than the MITA; thus, cases interpreting New Jersey law are of little guidance when interpreting the MITA.

Plaintiff contends that the state's practice violates the Uniformity of Taxation Clause in the Michigan Constitution:

> Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates. [Const 1963, art 9, § 3.][14]

Under this clause, "the controlling principle is one of equal treatment of similarly situated taxpayers." *Armco Steel v Dep't of Treasury*, 419 Mich 582, 592; 358 NW2d 839 (1984). Plaintiff argues here that similarly situated taxpayers—nonresidents receiving distributions from deferred compensation plans—are not being treated equally. Former state employees who now are nonresidents are being taxed, while other nonresidents are not being taxed.

The Court of Appeals rejected plaintiff's equal protection claim. Reversing a ruling of the Court of Claims, the panel held that

> both the 457 plan [in which plaintiff participated] and the deferred compensation plans offered by private employers are subject to Michigan income tax. The only difference between the two is the mechanism of collection. Under the 457 plan, defendant is withholding the income tax before the deferred compensation is distributed. Under the deferred compensation plans offered by private employers, the employers are not withholding the tax at the time of disbursement and consequently the burden lies with the recipient to report the income when filing an income tax return and to

---

[14] As a practical matter, in cases involving taxing statutes, there is no discernible difference between the Equal Protection and Uniformity of Taxation Clauses. [*Armco Steel v Dep't of Treasury*, 419 Mich 582, 592; 358 NW2d 839 (1984).]

then pay what is due and owing in tax. [193 Mich App 429.]

We agree with the analysis of the Court of Appeals.

The withholding requirements of the MITA are determined by several interrelated provisions of that act and the IRC. A brief review of these sections is instructive.

Section 351 of the MITA provides:

Every employer in this state *required under the provisions of the internal revenue code to withhold a tax on the compensation of an individual* except as otherwise provided shall deduct and withhold a tax in an amount computed by applying, except as provided by subsection (7), the rate prescribed in section 51 to the remainder of the compensation after deducting therefrom the same proportion of the total amount of personal and dependency exemptions of the individual allowed under this act . . . . [Emphasis added.]

Section 6(3) of the MITA defines compensation as "wages as defined in section 3401 and other payments as provided in section 3402 of the internal revenue code."

Section 3401 of the IRC distinguishes between deferred compensation received under 457 plans (public and nonprofit employers) and compensation received through plans of private employers (e.g., plans implemented under § 401[a]). Although § 3401 defines wages as "all remuneration . . . for services performed by an employee for his employer," it excludes from that definition of wages any remuneration paid from plans under §§ 401(a), 402(h)(1), and 403(a). Withholding from these distributions is governed by § 3405 of the IRC.

The state's withholding scheme for the several

types of deferred compensation plans is consistent with the IRC, which requires withholding for 457 plans but not for 401(a) plans. See 26 CFR 35.3405-1.

Although withholding is required in connection with 457 plans but is not required in connection with certain other deferred compensation plans, we are not persuaded that this difference violates the principle of equal treatment of similarly situated taxpayers. As stated by the Court of Appeals, "both the 457 plan and the deferred compensation plans offered by private employers are subject to Michigan income tax." 193 Mich App 429.

The State of Michigan has not adopted a policy forgiving the tax imposed on former residents who are receiving distributions from private deferred compensation plans. As noted by the state during oral argument, withholding is simply one method of collecting income taxes, but a failure to withhold taxes does not negate the underlying tax liability. Further, employing different methods to collect a tax does not render the tax unconstitutional under the Uniformity of Taxation Clause. As the Court of Appeals explained:

> The constitutional requirement of uniformity of taxation is concerned with uniformity of rates and assessment and not with uniformity in the time of collection. *Harper Creek School Dist v LeRoy Twp Supervisor,* 146 Mich App 515, 535; 382 NW2d 172 (1985). Uniformity as used in the Michigan Constitution simply guarantees equality of the tax burden. *Plymouth Twp v Wayne Co Bd of Comm'rs,* 137 Mich App 738, 749; 359 NW2d 547 (1984). [193 Mich App 429; see also *Huron-Clinton Metropolitan Authority v Bds of Supervisors,* 304 Mich 328, 335-336; 8 NW2d 84 (1943).]

Because the state income tax applies equally to all

former residents who receive deferred compensation, we hold that plaintiff's equal protection rights have not been violated by the state's practice of withholding income taxes from his deferred compensation plan distributions.

v

For the foregoing reasons, we affirm the decision of the Court of Appeals in all respects except as it applies to the distribution of interest in plaintiff's 457 plan account. We reverse the decision to the extent that it would require payment of the state income tax on such interest received by plaintiff while a nonresident. The case is remanded to the Court of Claims for further proceedings consistent with this opinion.

Cavanagh, C.J., and Levin, Brickley, and Boyle, JJ., concurred with Griffin, J.

Riley, J. (*concurring in part and dissenting in part*). I agree with the majority in all aspects save one: the taxation of plaintiff's interest income. I believe that the operative factor in determining when the state may tax "interest" income is the termination of deferral status of a § 457 plan. At that point, the balance of any deferred compensation, together with any capital appreciation, becomes the unrestricted property of the plan participant. Interest accrued thereafter would be taxable under state law as "interest income." I would therefore affirm the Court of Appeals decision in its entirety.

Under § 457, "any amount of compensation deferred under the plan, *and any income attributable to the amounts so deferred,* shall be includible

in gross income only for the taxable year in which such compensation or other income is paid . . . ." (Emphasis added.) Subsection (8) of 26 USC 457 defines "[i]ncome attributable" to the amounts so deferred as "[g]ains from the disposition of property [which] shall be treated as income attributable to such property." I read this to mean that any contributions to a § 457 plan, as well as any capital gains or interest earned thereon, are part of the corpus that is taxable for federal purposes. See *McDonald v Director, Div of Taxation,* 10 NJ Tax 556 (1989), modified on other grounds 247 NJ Super 326; 589 A2d 186 (1991)[1] (the corpus of a profit sharing, deferred compensation plan was treated as an indivisible unit of employer compensation to the extent that all benefits derived therefrom, including asset appreciation, were taxable as compensation for services rendered within the state). Because this state has adopted the federal definitions and standards, I believe that all of the amounts deferred or gains earned directly thereon are taxable as income attributable to services rendered within the state in the year paid regardless of the taxpayer's residence.

In my view, the only time that a distinction between contributions and asset appreciation is necessary is after the deferral status of compensation is terminated. At that point, a participant's share of a § 457 plan, which includes interest or other capital appreciation, becomes the property of

[1] The facts in *McDonald* indicate that the plaintiff earned a significant proportion of his salary for services rendered in other states in his capacity as salesman, officer, and director, which required him to travel to, and hence earn salary in, other states. The New Jersey Superior Court concluded that the calculation for taxable pension income was the quotient of the time employed within New Jersey and the time employed within and without New Jersey. *Id.* at 330-331. We need not address the merits of this position at this time, however, because the facts involved here nowhere indicate that plaintiff ever earned salary for work performed outside the state.

the employee participant.[2] In the case of a lump-sum payout, the participant's share is taxed once paid, and any implications that deferred compensation laws would have are no longer a concern. If the plan participant chooses periodic payments, there would still be the problem of interest earned *once the participant's plan balance technically becomes the property of the participant.* Accordingly, the participant's share of a § 457 plan could no longer be considered as "deferred compensation." Interest earned thereafter, then, would be true interest income of the individual and not part of the trust or plan corpus. Accordingly, the interest could only be taxed if the former employee were a *resident.* See MCL 206.113; MSA 7.557(1113).

In sum, I believe that the corpus of a deferred compensation plan designated to a participant, including gains by way of interest or capital appreciation, is taxable as an indivisible unit when deferral status is terminated. See *McDonald, supra.* Any further interest or capital gains earned after termination of deferred status would be taxed separately from whatever trust or plan corpus remains. Thus, interest earned at this point would be taxable only if the recipient were a

---

[2] It is on this basis that I distinguish cases such as *Michaelsen v New York State Tax Comm,* 67 NY2d 579; 505 NYS2d 585; 496 NE2d 674 (1986). In *Michaelsen,* the plaintiff received stock options as part of his compensation attributable to business carried on within the state. *Id.* at 583. The operative event for taxation is the exercise of the options, and the value for state taxation purposes is the difference between the option price and the fair market value of the stock on the date the options were exercised. *Id.* at 584-585. Any capital gains made *after* the exercise of the options were true investment income and not compensation "attributable to his 'business . . . carried on in th[e] state' . . . ." *Id.* at 584. In short, it is the date that a plan asset becomes the property of the participant, whether by exercise of a stock option or by termination of deferral status, that dictates the time after which any capital appreciation is no longer attributable to deferred compensation earned for the rendition of services within a state.

resident. From an administrative standpoint, this would only require that the trust or plan administrator calculate interest from the moment of termination of deferred status in cases of periodic payments.[3]

Based on the foregoing, I would affirm the decision of the Court of Appeals. The basis for taxing interest or other capital appreciation is for services rendered in the state until deferral status is terminated. Thus, state law on taxation of interest, and the related concept of residency, applies immediately following the termination of deferral status.

MALLETT, J., concurred with RILEY, J.

[3] In this case, the date of withdrawal, i.e., termination of deferred status, was January 1, 1982. Plaintiff's residency status changed on January 1, 1983. Accordingly, the state is entitled to taxes on any interest earned in this one year period not as compensation for services rendered in the state, but as "[i]nterest . . . allocable to this state [because] the taxpayer [was] a resident . . . ." See MCL 206.113; MSA 7.557(1113).